# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| AUDREY S. STRICKLAND, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:17-CV-04113-DGK-SSA |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Audrey Strickland ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, asthma, chronic obstructive pulmonary disease, major depressive disorder, and generalized anxiety disorder, but retained the residual functional capacity ("RFC") to perform work as a folding machine operator, garment sorter, and router.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on July 15, 2014, alleging a disability onset date of May 12, 2014. The Commissioner denied the application at the initial claim level, and Plaintiff appealed

the denial to an ALJ. The ALJ held a hearing, and on May 4, 2016, found Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for a review, leaving the ALJ's decision as the final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff argues that the ALJ in this case erred by: (1) failing to find her low IQ scores were a severe impairment; (2) disregarding therapist Mary Fox, M.A.'s opinion that Plaintiff would be off-task 10% of the time; and (3) affording little weight to Plaintiff's treating physician John Lucio, D.O.'s interrogatory responses. After reviewing the record and the applicable law, the Court finds the ALJ's decision is supported by substantial evidence.

## I. The ALJ's RFC determination adequately incorporated Plaintiff's borderline intelligence.

Plaintiff maintains that the ALJ erred by failing to find her low IQ scores were a severe impairment. On June 2, 2015, Plaintiff underwent a Weschler Adult Intelligence Scale – IV, which indicated she had borderline intellectual functioning.[2] R. at 379-380. Plaintiff received a 98 for verbal comprehension, 94 for perceptual reasoning, 71 for working memory, and 59 for processing speed,[3] resulting in a full-scale IQ of 80. While Plaintiff is correct that the ALJ did not list her borderline intelligence at step two of the sequential evaluation, this omission is harmless. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (holding a deficiency in opinion writing that does not affect the outcome of the case does not require reversal).

Here, the ALJ's RFC determination contained the following mental limitations:

She can understand, remember, and carry out simple, repetitive instructions consistent with unskilled work. She can work a job where there are no strict production quotas and she would not be subject to the demands of fast-paced production work; i.e., she can perform work by the shift and not by the hour. She

---

[2] "Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range." *Roberts v. Apfel*, 222 F.3d 466, 469 n.3 (8th Cir. 2000).

[3] "The Processing Speed Index measures speed of mental operation, psychomotor speed, visual memory, and visual-motor integration." *United States v. Riley*, No.: 2:15-cr-00077-MHH-SGC, 2015 WL 4911613, at *5 (N.D. Ala. Aug. 17, 2015).

can perform only simple decision-making related to basic work functioning. The claimant can tolerate only minor, infrequent changes within the workplace. She can tolerate occasional contact with coworkers and supervisors, but no contact with the general public.

R. at 19. "The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities,' despite his or her physical or mental limitations." *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374174, at *3 (July 2, 1996)). An ALJ has a duty to formulate the RFC based on all of the relevant and credible evidence of record. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). This includes a claimant's own description of limitations and daily activities, as well as medical records and observations of medical providers. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008); *Roberson*, 481 F.3d at 1023.

The ALJ's RFC in this case is supported by substantial evidence. Plaintiff held employment for many years with these cognitive abilities. *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (holding an individual's IQ "is presumed to remain stable over time in the absence of any evidence of a change in . . . intellectual functioning."); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). She is able to perform personal care activities, prepare meals, do basic housework, cook, do laundry, go shopping, get along with others, pay bills, and use a checkbook. R. at 200-202. This supports the ALJ's finding that Plaintiff could perform unskilled work.[4] *Gossett v. Colvin*, No. 2:14-cv-02021-MEF, 2015 WL 736898, at *12 (W.D. Ark. Feb. 20, 2015).

Plaintiff's argument that her low processing speed score would preclude employment is not supported by the record. There is no evidence, from a medical provider or otherwise, that Plaintiff performed at 30% less than other individuals. In fact, Plaintiff testified at the

---

[4] "Unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job or in a short period of time." 20 C.F.R. § 416.968(a).

administrative hearing that she had not received complaints from her boss that she was doing things too slowly. R. at 64. As a consequence, any limitation resulting from Plaintiff's low processing speed was accounted for in the RFC by the restriction to unskilled work without strict production quotas. *See Falk v. Colvin*, No. 3:14-CV-01915-AA, 2016 WL 1056978, at *4 (D. Or. Mar. 13, 2016).

II.     **The weight given to medical opinion evidence is supported by substantial evidence.**

An ALJ must consider the supporting explanation and consistency with the record as a whole when weighing medical opinion evidence. 20 C.F.R. § 416.927(c). *See also Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("[S]elf-reported activities of daily living provided additional reasons for the ALJ to discredit [medical opinions]."); *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (discounting medical opinions based on discredited subjective complaints); *Pearsall v. Massanari*, 374 F.3d 1211, 1219 (8th Cir. 2001). "[A] conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)).

A.      **The ALJ did not err by giving Ms. Fox's opinion partial weight.**

Plaintiff first contends that the ALJ's decision to afford therapist Mary Fox's opinions partial weight is not supported by substantial evidence. In discussing Ms. Fox's opinion, the ALJ stated:

> On the one hand, many of Ms. Fox's statements are consistent with the evidence of record, in support of moderate social limitations. On the other hand, the claimant was able to sustain part-time work, which is inconsistent with Ms. Fox's supposition that the claimant would be off-task at least 10 percent of the time. This limits the persuasive value of the opinion. The persuasive value of the opinion is further limited by the fact that it is a checkbox-style form that fails to explain how

5

the conclusions were reached. Thus, I give Ms. Fox's statements only partial weight.

R. at 25. Plaintiff takes issue with the ALJ discrediting Ms. Fox's opinion that Plaintiff would be "off-task" 10% of the time, arguing that "[b]eing off task at least 10% of the time on a full time job is not mutually exclusive of being able to sustain part-time work." This argument is misplaced.

The ALJ found that treatment notes, objective medical evidence, Plaintiff's daily activities, and Plaintiff's significant work activities did not support her claims of disabling limitations. R. at 25. This finding is supported by the record. Plaintiff stated she did not have difficulties with personal care, could prepare simple to complete meals daily, could perform work on her fiancé's trailer, manage basic housework and laundry, help with her fiancé and son's health and basic needs, go out outside daily, go shopping regularly, read, pay bills, and use a checkbook. R. at 199-202. These activities were consistent with the third-party statement of her fiancé. R. at 182-189. Plaintiff also worked part- to full-time at her custodial job after her alleged onset date until she was fired when her employer learned of her back surgery. When working part-time, Plaintiff's part-time schedule was still often eight-hour days most every day. R. at 320-321, 323, 325.

Even if the ALJ's decision to give Ms. Fox's opinion only partial weight were erroneous, such error was harmless. At the administrative hearing, the vocational expert testified that ten percent off-task behavior would be tolerated by employers for the identified work. R. at 69-70. Reversal is not warranted on this ground.

**B.     The ALJ did not err by giving Dr. Lucio's opinion little weight.**

Plaintiff next argues that the ALJ erred in affording Plaintiff's pain management physician John Lucio, D.O.'s opinion little weight.

On March 29, 2016, Dr. Lucio responded to the following interrogatory question:

6

4. Would it be consistent with Ms. Strickland's back condition and her level of pain for her to lay down during the day to relieve that pain?

Yes – [Ms. Strickland] states she lays down for 30 minutes 6+ times/day to relieve pain and this is the only thing she has found which gives significant relief.

R. at 475. The Court reads this answer as merely a recitation of Plaintiff's self-reported limitations, rather than an opinion held by Dr. Lucio. To the extent Dr. Lucio's response could be construed as an opinion of Plaintiff's limitations, the ALJ correctly found it to be inconsistent with Plaintiff's activities of daily living. This limitation is also inconsistent with the other medical evidence of record. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). In October of 2015, records demonstrate Plaintiff was walking one mile two to three times per week. R. at 417. Progress notes dated December 2, 2015, state that Plaintiff's complaints were inconsistent with clinical findings. R. at 415. On June 9, 2015, Plaintiff reported no spinal pain. R. at 425. On July 29, 2015, Plaintiff denied any pain and walked well without assistance. R. at 420, 422. Substantial evidence thus supports the ALJ's evaluation of Dr. Lucio's opinion.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   September 25, 2018                /s/ Greg Kays
                                          GREG KAYS, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT